## PETER GOODNOW *versus* SIMEON HOWE.

H transmitted a draft to G, his creditor, for collection, with a request that when paid, the proceeds should be passed to his credit. G indorsed the same and procured it to be discounted, and passed the proceeds to the credit of H. The draft was protested for non-payment, though the acceptor was in funds and would have paid the same on presentment, but the notary was unable to find his residence ; G took up the same as indorser, at the bank at which it had been discounted, paying costs of protest and damage ; *it was held,* that he was entitled to recover the same of H.

A creditor receiving a draft for collection and negotiating the same, and passing the proceeds thereof to the credit of his debtor, is not thereby concluded, unless chargeable with negligence or want of fidelity in endeavoring to collect the same.

THIS was assumpsit on two promissory notes. There was also a count for an account annexed, charging the defendant with L. D. Shaw's draft on Shaw & Dewey, and damages and expenses thereon, amounting in all to $416,90, and the usual money counts. The writ was dated March 15, 1839.

The defendant offered to be defaulted for $27,75, and costs, which was admitted to be the amount, if the plaintiff was not entitled to recover for the draft.

From the report of SHEPLEY J. who presided at the trial of the cause, it appeared, that the defendant on the 5th of Dec. 1836, remitted to the plaintiff the draft in question, dated Nov. 1836, drawn by L. D. Shaw, one of the firm of Shaw & Dewey, at that time doing business in New York, for the sum of $400, and payable to the order of Neal D. Shaw in three months from date — and indorsed by him — requesting the plaintiff to give him credit for the same when paid; that the plaintiff obtained a discount of said draft at the Union

Bank, Boston, indorsing the proceeds, $394,53, on one of the notes in suit ; that the draft was forwarded in the usual course of business by the cashier of the Union Bank, to a bank in New York, for collection, and was there protested for non-acceptance, the notary being unable to find the place of business of Shaw & Dewey ; that notices were forwarded to the Union Bank ; that the Union Bank notified the plaintiff who sent the notices to the defendant by letter ; but it did not appear at what time nor in what manner they were sent; that at the maturity of the draft it was protested for the same cause as before, for non-payment, that the plaintiff was duly notified thereof and took up the draft at the Union Bank, and returned the same agreeably to his letter of March 18, 1837, enclosed to Messrs G. & J. Hobbs of Eastport, the defendant living in New Brunswick, requesting them to forward the same to the defendant ; that Messrs Hobbs, on April 21st, 1837, returned the draft by letter to the plaintiff advising him that they had endeavored to effect a settlement of the same with the drawer, without success, as he was unwilling to pay the damages, that they at the same time remitted to the plaintiff a new draft of the same parties for the same amount and costs of protest, but not including damages, saying that the plaintiff might retain either draft at his election and return the other ; and that the plaintiff retained the protested draft and sent back the other to Messrs Hobbs, and enclosed the old draft with protest to some one at Eastport ; that it was not directly sent to him, and it did not appear that he ever received it.

It further appeared, that the defendant was advised of the taking of the new draft, and made no objections to it and said he had written to the plaintiff approving of the course he had taken.

On March 18, 1837, the defendant wrote the plaintiff as follows ; —

" Yours of the 8th inst. is at hand. I regret you have had so much trouble with the draft I sent you. You write that you have had to take it up from the bank at an expense of $18. Have you a prospect of collecting it either from the drawer or

of those upon whom it is drawn? If not, forward it to me, duly protested, and I will call on the indorser, who lives at Baring. The other parties are in New York, and from what I can learn, would probably have accepted it on presentment, and paid it when due if called on. I sent the notices you sent me to the parties they were for; the one for the indorser was duly handed him. I hope ere this, you have collected it. I will forward you something as soon as I can, and am sorry I have not used you better."

On 6th Sept. 1837, the defendant made the plaintiff a remittance, and asked for a statement of his account.

It appeared in evidence that the firm of Shaw & Dewey commenced business in New York, 23d of Sept. 1836, and had a counting room and lumber yard at the corner of Rivington and Margin streets, with a large full sign across the front of their office, from the time they commenced till they closed business; that they were solvent and in good credit, meeting all their engagements, from 23d Sept. 1836, to the middle of May, 1838; that they were in funds to meet the draft in controversy, and should have paid the same if it had been presented.

It further appeared, that Neal D. Shaw, the indorser, called on the plaintiff, in Boston, not long after the draft was protested, and offered to pay the same if the plaintiff would release his claim for damages, said Shaw objecting to pay damages because the draft had never been presented, and the drawers were ready to pay the same had it been presented. It likewise appeared that he was solvent till the fall of 1837. It was admitted the risk of collection was not increased by a discount of the draft.

A default is to be entered on the defendant's offer to be defaulted, or for such further sum as the Court shall be of opinion the plaintiff is by law entitled to recover.

*Hobbs,* for the defendant. The plaintiff had a right to receive the draft in question, either in payment of the debt due him, or for the purposes of collection. If he elects for which purpose he will hold it, he is bound by such election. If it be

considered as payment, it discharges so much of the debt due. If received for the purpose of collection, then the plaintiff held the draft as agent, and is bound faithfully to attend to the duties of his agency. If the plaintiff received the bill as agent, he is entitled only to costs of protest and postage. If by reasonable diligence he might have collected the debt, the defendant is not liable. The defendant is not responsible for damages unless he discounted the bill. The plaintiff then paid them voluntarily and without the request of the defendant, and can have no claim for them as against him.

But the plaintiff indorsed the draft, and having indorsed it, he must account for it *pro tanto*, in payment of the debt due from the defendant. He thereby elected to consider the draft his own and to release the defendant for that amount. His claim then is against the parties to the bill alone. The defendant was not entitled to notice, not being a party to the bill.

The subsequent promise of the defendant does not bind him. It was made without consideration and without a knowledge of all the facts in the case. 1 Saund. Pl. & Ev. 349.

*D. T. Granger*, for the plaintiff. The risk was not increased by negotiating it and placing the same in a bank for collection. The plaintiff could only make the note available by discount, and the defendant when apprized that he had so done, made no objections. The mere fact of discounting it, did not make it his own. The plaintiff has been guilty of no negligence in his endeavors to collect the draft. The defendant has, with a full knowledge of what was done by the plaintiff, promised to pay, and such promise is binding on him. The defendant, as the party in interest, was entitled to damages and the plaintiff having paid them, may recover them.

The opinion of the Court was by

WESTON C. J. — The draft in controversy was remitted by the defendant to the plaintiff, with a request, that when paid, it should be passed to his credit, he being indebted to the plaintiff. This imposed upon the latter reasonable fidelity, in discharge of his trust. He was liable to no other risk or haz-

ard, in relation to the business. He put it in train for collection, by causing it to be discounted at the Union Bank, at Boston. This did not increase the hazard to the defendant, or to the parties to the draft. It enlisted the vigilance of the bank 'in the collection, they having great facilities, through their officers, and by their extensive correspondence. The defendant, when advised of what was done, made no objection; but in his letter of March 18, 1837, acknowledging the receipt of the notices, requested that the draft might be returned to him, that he might call on the indorser. If he had disapproved of the plaintiff's course, or claimed to hold him responsible for the draft, or any part of the damages or expense, he was required, upon the principles of fair dealing between merchants, so to have apprized him.

The fact, that the plaintiff credited the defendant with the avails, before the draft had been honored, ought not to conclude him, unless chargeable with negligence, or a want of fidelity. And this is not imputable to him, from any evidence presented in the case. The banks and the notary were the usual and approved agents, proper to be employed in the discharge of the duty confided to him. Failing to realize the expectations of the defendant, he advises him of the result and forwards to him notices for the indorser and drawer, which were received and transmitted. It thereupon became the business of the defendant to resort to the parties for payment. Isaac Hobbs, the deponent, remitted a new draft to the plaintiff, which he was to retain or not, at his election; and of this the defendant approved. The plaintiff promptly returned the new draft. Having done his duty, and fully advised the defendant, if Neal D. Shaw, the indorser, was ready and willing to pay the amount of the draft, without the damages, it was for the defendant to decide, whether that proposition would be acceptable. We are not aware, that the plaintiff was bound to adjust the matter upon those terms.

Upon the whole, if any loss has been sustained, it does not appear to us, that it should fall upon the plaintiff. He was acting for the defendant, and faithfully discharged his duty.

The defendant, as is fairly to be implied from his correspondence, was satisfied with what he had done. The plaintiff is justly entitled then to charge back the amount of the draft, and to add thereto the damages and expenses, by him actually paid; and judgment is to be made up accordingly.